IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:22-cr-243 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| JAMES C. SMITH, | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter is before this Court on Defendant James C. Smith's Motion for Early Termination of Supervised Release. (ECF No. 36). The Government opposes this Motion. (ECF No. 37). For the following reasons, Mr. Smith's Motion is **DENIED**.

### I.    BACKGROUND

On April 14, 2023, James C. Smith pleaded guilty to one count of possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On November 21, 2023, he was sentenced to a term of 12 months and 1 day in prison, followed by 3 years' supervised release. (ECF No. 34 at 2–3).

Smith was released from prison in September 2024 and began serving his term of supervised release. His supervision is scheduled to end in September 2027. (ECF No. 36 at 2). On April 7, 2026, he moved for early termination of his supervised release pursuant to 18 U.S.C. § 3583(e)(1). He argues that early termination is appropriate in light of his mental health treatment, his involvement with his church, and his success in obtaining a commercial driver license. (*Id.* at 3–5). According to Smith, he wishes to move to Murfreesboro, Tennessee, to live closer to family. He argues that termination of his supervision will allow him to achieve this goal, while also

1

permitting him to cross state lines freely for future trucking opportunities. Last, Smith indicates that his probation officer does not oppose the termination of his supervision. (*Id.* at 5).

On April 28, 2026, the Government opposed Smith's Motion. The Government argues that early termination of his supervised release would run counter to the applicable section 3553(a) factors and the interests of justice given the risk that Smith still may pose a danger in the future. The Government cites his history of violence—including a prior conviction for reckless homicide with a firearm, alongside "multiple convictions for violence against women and multiple convictions involving firearms"— his longtime abuse of alcohol and marijuana, his previous violations of probation, and his disciplinary violations while incarcerated as reasons to deny his request. (ECF No. 37 at 1–3). The Government concludes by observing that compliance is expected of defendants on supervised release, and Smith's desire to be in Tennessee could be accommodated by transferring his supervision to another judicial district. (*Id.* at 3).

## II. STANDARD OF REVIEW

A court may "order early termination of the period of supervised release" when the defendant "has served one full year of supervised release." *United States v. Green*, 2009 WL 1606603, at *1 (S.D. Ohio June 5, 2009) (Marbley, J.) (citing 18 U.S.C. § 3583(e)(1)). Courts enjoy discretion in considering whether early termination is warranted by the defendant's conduct *and* is in the interest of justice. *United States v. Hale*, 127 F.4th 638, 640 (6th Cir. 2025). Courts must consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). 18 U.S.C. § 3583(e). These factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence in criminal conduct; (3) the need to protect the public from the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care, or other

corrective treatment; (5) the sentencing range provided for by the guidelines; (6) any pertinent policy statements issued by the Sentencing Commission; (7) the need to avoid sentence disparities; and (8) the need to provide restitution to any victim.  18 U.S.C. § 3553(a)(1); (a)(2)(B)–(D); (a)(4)–(7).

### III.    LAW & ANALYSIS

After carefully considering the statutory requirements, the Court determines that the first four factors are the most relevant to consider in this case.  First, Smith has a long history of violence, including multiple offenses involving violence and firearms, as well as a 2012 conviction for reckless homicide after he shot and killed his cousin's son.  (ECF No. 26 at 8–15). Compounding this concern, he also has a history of substance abuse involving marijuana and alcohol.  When he was arrested for the instant offense, he was severely intoxicated.  (*Id.* at 5–6, 21).  Though he may have complied with the terms of his supervision in this matter, "compliance with all conditions is expected of an individual on supervised release, and noncompliance is a ground for revocation." *Hale*, 127 F.4th at 641 (cleaned up; citation omitted).  Thus, district courts generally find early termination of supervised release proper "only when exceptionally good conduct or other changed circumstances are present." *Id.*   Particularly in light of Smith's previous violations, the Court finds that this factor strongly weighs against early termination.  Smith's history suggests that he would still benefit from the rehabilitation that supervised release offers. *See Esteras v. United States*, 606 U.S. 185, 196 (2025) (supervised release is a form of rehabilitation).

Second, Smith's sentence has not yet provided adequate deterrence.  Although he faced up to 10 years' imprisonment, the Court imposed a below-guidelines sentence.  (ECF No. 26 at 1). Smith concedes as much, acknowledging that the Court gave him "a sharp downward variance

3

from his guideline range of 46–57 months" imprisonment.  (ECF No. 36 at 4).  Thus, early termination of supervised release in this case would not serve to deter the public from similar criminal conduct.  *Cf. United States v. Sosna*, 2025 WL 3140641, at *2 (S.D. Ohio Nov. 10, 2025) (McFarland, J.).  This factor also weighs against early termination.

Third, the Court is not satisfied that the public has been adequately protected from Smith, in light of the instant violation, his criminal history, his prior substance abuse and mental health issues, and his representation that he has been "actively receiving mental health services."  (ECF No. 36 at 4).  The Court commends Mr. Smith for his progress, but recognizes that he stands to benefit more from continued supervision.  This factor also weighs against early termination.  *See United States v. Sherrod*, 2026 WL 1361485, at *2 (S.D. Ohio May 15, 2026) (Marbley, J.) (this factor weighed against early termination where a felon in possession of a firearm received a comparatively light sentence and had a history of issues with alcohol and marijuana).

Fourth and last, it is true that termination of supervision may afford Smith with more vocational opportunities, by making him a more attractive prospect for commercial trucking businesses that need truckers who can easily cross state lines.  (ECF No. 36 at 4–5).  Although not vocational training *per se*, the Court recognizes this concern is implicated by the statutory factor.  This factor may weigh in favor of early termination, albeit slightly.

The parties do not address the sentencing range, sentencing disparities, or policy statements of the Sentencing Commission, and the Court finds that these factors are inapplicable.  And because no victim is identified as needing restitution, that factor is also essentially irrelevant.  *United States v. Emmert*, 2025 WL 3165226, at *2 n.2 (S.D. Ohio Nov. 13, 2025) (Marbley, J.).  In sum, three of the applicable factors weigh against early termination, while one factor slightly favors it.

4

In evaluating Smith's conduct and the interests of justice, the Court concludes that both counsel against early termination of supervised release.  *See United States v. Nuriso*, 2025 WL 3751089, at *3 (S.D. Ohio Dec. 29, 2025) (Marbley, J.) (determining that the interests of justice would not be served by early termination of an already-lenient probation sentence).  The record indicates that Smith has a history of violating the terms of his supervised release, and the Court is convinced that he will benefit from more time under the watchful eye of the probation officer.  Though the Court appreciates the difficulties that continued supervised release may pose on Smith's job prospects, the section 3553(a) factors, Smith's conduct, and the interests of justice all counsel decisively against early termination of supervised release.

Last, to the extent that Smith seeks to relocate to Tennessee, his desire to move does not provide a compelling reason for terminating his supervision.  As the Government points out, his supervision could be transferred to a judicial district in Tennessee.  (ECF No. 37 at 3).  Should Smith desire to move, he can seek appropriately-tailored relief by requesting the transfer of his supervised release.

## IV.    CONCLUSION

For these reasons, James C. Smith's Motion for Early Termination of Supervised Release (ECF No. 36) is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: May 18, 2026**

5